This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41306**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**SETH ANTHONY KELLUM, JR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Joseph A. Montano, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Alexander W. Tucker, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mallory E. Harwood, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Seth Anthony Kellum, Jr. appeals his convictions of trafficking a controlled substance by possession with intent to distribute, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006), and possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(A) (2021). On appeal, Defendant advances three arguments: (1) the trial testimony of a forensic scientist who did not personally test the substances at issue violated Defendant's state and federal rights to confront witnesses

against him, *see* U.S. Const. amend. VI; N.M. Const., art. II, § 14; (2) the admission of evidence not related to any charge constituted plain error; and (3) a sentence enhancement he received violated Defendant's due process rights. We affirm.

## BACKGROUND

**{2}** Defendant was arrested pursuant to an arrest warrant after being found seated in the passenger seat of a vehicle. At the time of Defendant's arrest, officers found and seized a number of items suspected to belong to Defendant, including a firearm, magazines and ammunition, a package containing small plastic bags, a scale, and several bags containing both a white, crystalline substance and what appeared to be mushrooms. The crystalline substance and mushrooms were sent to a state lab for testing and confirmation that they were, in fact, illegal drugs.

**{3}** The forensic scientist who received the substances and conducted the original test, via a gas chromatograph/mass spectrometer (GC/MS) machine, was Deadra Caleb. After testing the substances, Caleb created, among other things, a report that stated her conclusions regarding the identity of the substances at issue and case notes containing her observations during the test. The State initially intended to call Caleb as its expert witness in drug identification, but it later identified another forensic scientist, Andrew Barber, who would testify in Caleb's place. The State explained that Caleb had voluntarily left the state crime lab to pursue employment elsewhere. The State noted that Barber would "conduct a review of the chemical analysis and associated findings and reach an independent conclusion as to the nature of the controlled substances" at issue. The State assured the district court that Barber would "testify to [his] own opinions and not simply parrot the contents of . . . Caleb's analysis."

**{4}** At trial, Barber testified as promised. He stated that in preparation for testimony, he reviewed the entirety of Caleb's casefile, including her report and notes, as well as personally inspected the raw data on the GC/MS machine that served as the basis for her findings. When the State asked Barber if he could identify what type of machine Caleb used to test the substances seized, Defendant objected that the answer constituted hearsay. A bench conference ensued during which the district court ruled that Barber's forthcoming answer was admissible under Rule 11-703 NMRA, which permits an expert to base his opinion on otherwise inadmissible facts or data if experts in the field "reasonably rely" on such materials. Nonetheless, the district court permitted Defendant to voir dire Barber outside the presence of the jury to explore the extent to which his opinions were based on Caleb's work product. During voir dire, Barber explained that while he was basing his opinions on both the notes and report Caleb created, Barber also personally reviewed the data produced by the GC/MS machine Caleb used. Indeed, Barber stated that he personally went to the machine Caleb used to conduct the test and reviewed "some of the data" on that machine. Defense counsel asked, "All the opinions . . . that you're being asked about . . . your opinions, your independent opinions, they're all based on . . . what's in the casefile and the raw data that you looked at, correct?" Barber responded affirmatively.

**{5}**     Before the jury, Barber identified the two substances underlying Defendant's convictions as methamphetamine and psilocyn, the chemical revealed in a test of psilocybin mushrooms. Barber explained that he could identify both substances by comparing the results from the tests Caleb performed to results from control tests of known quantities of methamphetamine and psilocybin mushrooms. On cross-examination, Barber conceded that he was primarily relying on the materials Caleb "created and printed out," that he personally did not retest anything, and that he was relying on Caleb to have correctly followed all of the proper steps and procedures when testing the drugs. Barber specifically stated he knew Caleb was following the lab policies during the test from "looking at the data and the notes." Defendant was subsequently convicted of trafficking methamphetamine by possession with intent to distribute and possession of psilocybin mushrooms. Defendant appeals.

## DISCUSSION

### I.     Confrontation Clause

**{6}**     Defendant's primary contention on appeal is his claim under the state and federal Confrontation Clauses. *See* U.S. Const. amend. VI; N.M. Const., art. II, § 14. "We review claimed violations of the confrontation right de novo." *State v. Huettl*, 2013-NMCA-038, ¶ 16, 305 P.3d 956. Defendant principally argues that newly issued precedent from the United States Supreme Court, *Smith v. Arizona*, 602 U.S. 779 (2024), controls our analysis and requires reversal of this Court's previous decision in *Huettl*. He further asserts that if *Smith* is not controlling and we can avoid overruling *Huettl*—in which we considered only the federal Confrontation Clause, *see* 2013-NMCA-038, ¶¶ 1, 4, 16-39—then we should conclude that Barber's testimony violates Defendant's state confrontation rights pursuant to the New Mexico Constitution. *See* N.M. Const., art. II, § 14. We are unpersuaded.

**{7}**     *Smith* involved a factual scenario identical to that of this case, except in one critical aspect: the testifying forensic expert in *Smith*, Greggory Longoni, did not personally review the raw data produced by the machine used to test the drugs at issue. *See* 602 U.S. at 790-91. In *Smith*, as here, the defendant was charged with multiple counts of possession of various illicit drugs "for sale," as well as simple possession of other suspected drugs. *Id.* at 789. As here, the forensic analyst who tested the suspected drugs, Elizabeth Rast, left employment at the state crime lab before trial, and the state identified Longoni as a substitute analyst who would review Rast's work and testify in her place. *Id.* at 790. Longoni reviewed "a set of typed notes and a signed report" created by Rast, and then at trial, "related what was in them, item by item by item." *Id.* at 790-91. The United States Supreme Court considered the rationale used by the Arizona Court of Appeals in the case, which held that "an expert may testify to the substance of a nontestifying expert's analysis, if such evidence forms the basis of the testifying expert's opinion." *Id.* at 792 (alteration, internal quotation marks, and citation omitted). It then expressly rejected that rationale. *Id.*

**{8}** In its place, the United States Supreme Court stated the foundational question in a Confrontation Clause case: "a court analyzing a confrontation claim must identify the role that a given out-of-court statement . . . served at trial." *Id.* at 793. The Court identified the pertinent out-of-court statements as "Rast's statements about her lab work." *Id.* Here, we are not convinced that Barber represented to the jury or otherwise relied on an out-of-court statement while testifying about his conclusions regarding the identity of the substances at issue. We, of course, acknowledge that Barber admitted to having reviewed Caleb's lab notes and written report—exactly the same type of documents used by Longoni in *Smith* and even related to a test on a GC/MS machine, as in this case, *see id.* at 790-91—but, unlike *Smith*, Barber also came to independent conclusions based on his review of the data from the machine Caleb used:

> Prosecutor: Did you come to an independent conclusion based off your review of all the available information and data in this matter?
>
> Barber: Yes, I did.
>
> Prosecutor: And what substance based off your independent review and conclusion is lab item number 2?
>
> Barber: The data are consistent with psilocyn.

The same questions were asked and like answers returned regarding the seized methamphetamine. As we stated in *Huettl*, raw data produced by one forensic analyst during a test to determine a substance's identity is "not a testimonial statement that would give rise to a confrontation right." 2013-NMCA-038, ¶ 26. To the extent that *Smith* changed the applicable Confrontation Clause analysis, it does not affect this statement from *Huettl* because, as we have said, raw data was not relied on by the testifying expert in *Smith*. *See* 602 U.S. at 790-91.

**{9}** *Smith* repeatedly focused its analysis on Rast's out-of-court statements, which Longoni relied on to form his opinions. *See id.* at 793 ("If Rast's *statements* came in to establish the truth of what she said, then the [Confrontation] Clause's alarms begin to ring; but if her *statements* came in for another purpose, then those alarms fall quiet." (emphasis added)); *id.* at 796 ("The jury cannot decide whether the expert's opinion is credible without evaluating the truth of the *factual assertions* on which it is based." (emphasis added)); *id.* at 798 ("Rast's *statements* thus came in for their truth, and no less because they were admitted to show the basis of Longoni's expert opinions." (emphasis added)). Due to the fact that, in this case, Barber reviewed the actual data produced by Caleb's test, a circumstance not present in *Smith*, we cannot say that *Smith* controls our analysis or conclusion in this case.[1]

---

1We nonetheless note that *Smith*, if interpreted differently by our Supreme Court, may call into question the continued viability of *Huettl*. That is because in *Smith*, the United States Supreme Court noted that it was not simply the results of the GC/MS test—as articulated in Rast's report and notes and conveyed to

**{10}** We similarly conclude that *Smith* does not require us to overturn *Huettl*, in which the testifying expert *did* rely on raw data produced by another, nontestifying analyst. *See* 2013-NMCA-038, ¶ 3. Aside from Defendant's assertion that *Smith* abrogated *Huettl*, which we reject above, his only argument for overturning the case relies on reasoning articulated in its dissenting opinion. He specifically points to the statement, "the test results performed by [the testing analyst] were admitted as substantive testimonial evidence at [the d]efendant's trial and that [the d]efendant was deprived of his right to cross-examine [the testing analyst] in violation of his constitutional right of confrontation under the Sixth Amendment." *Id.* ¶ 49 (Vigil, J., dissenting in part). Defendant's argument in this regard is merely a reiteration of argument already considered and rejected by a panel majority of this Court, and Defendant does not offer any new argument, outside of what was considered in *Huettl*, for ruling differently today. Thus, we find no reason to overturn *Huettl* and determine that its reasoning controls our conclusion.

**{11}** Defendant's arguments that we should interpret the Confrontation Clause in the state constitution, N.M. Const., art. II, § 14, differently than its federal counterpart are equally unavailing. Our Supreme Court has already concluded that there is no reason to interpret the clauses differently. *See State v. Lopez*, 2013-NMSC-047, ¶¶ 16-21, 314 P.3d 236 (finding no textual, structural or policy-based reasons to depart from federal interpretation of a defendant's confrontation rights). Even if we could ignore such precedent, which we cannot, *see Mares*, 2024-NMSC-002, ¶ 34, Defendant has not offered us any meaningful argument beyond what was, in Defendant's view, a lack of clarity in federal caselaw prior to *Smith*—which Defendant himself asserts *Smith* rectified. *See generally Williams v. Illinois*, 567 U.S. 50 (2012) (resulting in only a

---

the jury by Longoni—that offended the Confrontation Clause, but also Rast's assertions about the propriety of the tests conducted:

> Longoni could opine that the tested substances were marijuana, methamphetamine, and cannabis only because he accepted the truth of what Rast had reported about her work in the lab—that she had performed certain tests according to certain protocols and gotten certain results. And likewise, the jury could credit Longoni's opinions identifying the substances only because it too accepted the truth of what Rast reported about her lab work (as conveyed by Longoni). If Rast had lied about all those matters, Longoni's expert opinion would have counted for nothing, and the jury would have been in no position to convict. So the State's basis evidence—more precisely, the truth of the statements on which its expert relied—propped up its whole case. But the maker of those statements was not in the courtroom, and Smith could not ask her any questions.

*Smith*, 602 U.S. at 798. Here, Barber acknowledged before the jury that he was relying on Caleb's written assertions that she followed the lab's policies when testing the substances at issue. Nonetheless, our conclusion in *Huettl* is not merely this Court's expression of the current law in our state, but is also supported by existing caselaw from our Supreme Court, which we are not at liberty to disregard. *See State v. Navarette*, 2013-NMSC-003, ¶ 22, 294 P.3d 435 ("[A]n expert witness may express an independent opinion regarding his or her interpretation of raw data without offending the Confrontation Clause."); *see also State v. Mares*, 2024-NMSC-002, ¶ 34, 543 P.3d 1198 ("The Court of Appeals is to be governed by the precedents of this Court . . . even when a United States Supreme Court decision seems contra, or when the Court of Appeals determines that this Court would conclude that the precedent is no longer good law and would overrule it given the opportunity." (internal quotation marks and citations omitted)). As such, even while *Smith* may cast doubt on *Huettl*'s reliability, we are without authority to adopt new federal caselaw or analyses that affect or contradict existing precedent from our own Supreme Court. Instead, we flag this concern for our Supreme Court.

plurality opinion among a fractured court), *abrogated by Smith*, 602 U.S. 779. Thus, Defendant has provided us with no reason to depart from now-clarified federal precedent; nor has he explained how we can reinterpret the scope of a state constitutional provision already defined by our Supreme Court. We, therefore, decline to depart from the reasoning announced in *Huettl*, which governed a nearly factually identical circumstance and, in our view, remains good law. For the foregoing reasons, we conclude Barber's independent review of the raw data produced by Caleb's tests did not violate Defendant's state confrontation rights.

## II.     Admission of Evidence

**{12}**     We next turn to Defendant's argument that admission of evidence not related to any charge constitutes plain error. The evidence at issue is a single, blue pill that had been packaged with the methamphetamine seized from Defendant at the time of his arrest. The district court had previously ruled to exclude reference to uncharged crimes, and the pill was not related to the charges at issue. Discovering the existence of the pill on the morning of trial, the district court ruled that no state witness was allowed to mention it, and it stated that it would give a curative instruction admonishing the jury not to "speculate about any evidence that doesn't come through testimony or by way of exhibit." Defendant did not further object and concedes on appeal that, absent such objection, our review is for plain error.

**{13}**     Plain error review, as an exception to the preservation requirement, applies "only if the alleged error affected the substantial rights of the accused." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted). "To find plain error, th[is] Court must be convinced that admission of the [evidence] constituted an injustice that created grave doubts concerning the validity of the verdict. Further, in determining whether there has been plain error, we must examine the alleged errors in the context of the [evidence] as a whole." *See id.* (alteration, omission, internal quotation marks, and citations omitted).

**{14}**     Here, Defendant does not contend that the State or any witness violated the judge's ruling by discussing the blue pill before the jury. Rather, Defendant contends that admission of the pill constitutes plain error requiring reversal because it creates "grave doubts" regarding whether Defendant was trafficking drugs, or merely possessed them. We are not persuaded. Assuming without deciding that admission of the pill was error, it was neither identified nor discussed at trial. While Defendant argues the jury nonetheless inferred it was fentanyl, and was thereby unduly prejudiced against him on the trafficking charge, nothing in the record supports his assertion. *See State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

**{15}**     Furthermore, the State presented significant testimony and evidence that otherwise supported its accusation that Defendant intended to sell the drugs in his possession. In addition to the testimony discussed above regarding the actual drugs

seized from Defendant, the jury heard testimony from two of the arresting officers that Defendant was caught with a package of numerous small baggies, a small digital scale, a firearm, and numerous magazines and ammunition.

**{16}** Jurors also heard testimony from a law enforcement officer who was qualified as an expert in distinguishing between drug possession and drug trafficking. The expert testified that the methamphetamine appeared "ready for . . . sale," that the baggies seized are normally used in narcotics distribution, and that digital scales like the one found with Defendant during his arrest are typically used to sell drugs. In light of the above-mentioned testimony and evidence, and given that the State did not mention or otherwise emphasize the blue pill, we conclude that its admission alongside the methamphetamine does not create grave doubts about the validity of the verdict and, therefore, conclude that no plain error exists.

### III.    Sentence Enhancement

**{17}** Defendant's last argument challenges a sentence enhancement he received because he was convicted of a "second or subsequent" trafficking offense pursuant to Section 30-31-20(B)(2). Defendant asserts this enhancement violated his substantive due process rights but concedes this argument is unpreserved because it was not raised below. As such, we decline to address his argument. *See Montoya*, 2015-NMSC-010, ¶ 45 ("In order to preserve an issue for appeal, a [party] must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)); *State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)). Defendant argues that the preservation requirement for substantive due process claims in a criminal case is unclear but does not provide us with any authority that the general preservation requirement does not apply. "[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists." *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129. We, therefore, reject this argument.

**CONCLUSION**

**{18}** We affirm.

**{19}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**